STATE of Alaska, Appellant,

v.

Clayton GOTTSCHALK, Appellee.

No. A–8798.

Court of Appeals of Alaska.

July 7, 2006.

Kenneth J. Diemer, Assistant Attorney General, and Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellant.

Margi Mock, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

Criminal Rule 45(c)(1) provides that the time for bringing a defendant to trial is calculated "from the date the charging document is served upon the defendant." This case raises the question of whether, when the defendant is in court on one charge and is given a copy of a new indictment in a separate case by the prosecutor at the direction of the judge, the defendant has been served with this indictment for purposes of the speedy trial rule. We conclude that this does not constitute "service" for purposes of the rule.

*Factual and procedural background*

Gottschalk was convicted in 1998 of felony driving while intoxicated and other related offenses. In 2003, Gottschalk was on probation from these earlier convictions. Gottschalk's probation officer filed a petition to revoke Gottschalk's probation based upon information that Gottschalk had violated his probation by consuming alcohol and driving under the influence. Gottschalk was arrested in Bethel on the probation violations and brought to Anchorage.

Gottschalk was brought to court on a petition to revoke his probation. While at the courthouse, the assistant district attorney informed the court, and Gottschalk, that Gottschalk had been indicted in Bethel on a recent felony DUI which had been a basis for the petition to revoke. Superior Court Judge Michael L. Wolverton instructed the prosecutor to obtain information about the Bethel case for Gottschalk and his attorney. In a court proceeding on the petition to revoke on July 9, 2003, at the direction of the court, the prosecutor gave Gottschalk and his attorney a copy of the indictment for felony DUI in the Bethel case.

On October 8, 2003, Gottschalk was served in an Anchorage jail with the warrant issued by the superior court for the felony DUI indictment. On October 9, the Anchorage court set bail on this charge for Gottschalk and appointed the Public Defender Agency to represent him. Gottschalk was ultimately transported to Bethel and arraigned on the indictment on November 10, 2003. Superior Court Judge Dale O. Curda concluded that Criminal Rule 45 had started on October 8, 2003, when Gottschalk was served with the warrant. Gottschalk's counsel objected, arguing that he was served for Criminal Rule 45 purposes when he received the copy of the indictment in open court on July 9. Gottschalk filed a motion to dismiss based upon Criminal Rule 45.

Following an evidentiary hearing, Judge Leonard R. Devaney granted Gottschalk's motion to dismiss. Judge Devaney concluded that Gottschalk was served with the charges when, at the direction of Judge Wolverton, Gottschalk received the charging documents in open court from the prosecution. The State filed a petition for review challenging this decision. We granted review. We now reverse Judge Devaney's decision granting Gottschalk's motion to dismiss.

*Analysis*

According to Criminal Rule 45(c)(1), the time for bringing a defendant to trial begins running when the charging document is served. However, the rules does not define when a defendant is "served."

Prior to 1993, the 120-day period began on "the date the defendant is arrested, initially arraigned, or from the date the charge (complaint, indictment, or information) is served upon the defendant, whichever is first."[1] In 1993, the rule was amended at the request of the State. The State pointed out that under the former rule a police officer, by making an arrest, would initiate the speedy trial rule. The State contended that the decision to initiate a criminal prosecution should be

made by a State prosecutor, not the police. And the speedy trial period should start only after the prosecutor had initiated charges.[2]

Gottschalk argues that he was served for purposes of Criminal Rule 45 when, on July 9, the prosecutor gave him a copy of the Bethel indictment in open court at the direction of the judge. He argues that all of the parties were aware that he had received a copy of the indictment in a court proceeding. He argues that this constitutes service. Judge Devaney agreed with Gottschalk's argument.

The State argues that all it did was provide Gottschalk with an informational copy of the indictment because the indictment was relevant to the petition to revoke Gottschalk's probation. The State points out that Gottschalk's attorney had been appointed to represent him only in the probation revocation proceeding, not on the Bethel DUI indictment. And Judge Wolverton took no action on the indictment. He did not arraign Gottschalk, set bail, or appoint an attorney to represent him on the new charge. The State argues that, under the criminal rules, the court had to assert personal jurisdiction over Gottschalk on the Bethel indictment in order to start the prosecution and start Criminal Rule 45. The State argues that to start Criminal Rule 45, Gottschalk needed to be formally served with the charges under Criminal Rule 4 or Criminal Rule 9, or formally arraigned under Criminal Rule 10. The State argues that, just because a prosecutor, police officer, or other agent of the state informally provides a copy of charges to a defendant, the State has not formally commenced a prosecution as required by the criminal rules.

Gottschalk's case highlights a defect in Criminal Rule 45. Under the rule, as long as the State did not serve him with the Bethel indictment, the State could hold Gottschalk for an indeterminate period of time on the probation revocation petition without ever starting Criminal Rule 45. The superior

1. Former Alaska Criminal Rule 45(c)(1) (1992).

2. *See* Supreme Court Order No. 1127 (eff. July 15, 1993) (amending Rule 45); Cynthia Hora, Memorandum on Criminal Rule 45 Revisions (April 6, 1992) (suggesting that 120-day period should not begin until defendant is held to answer for charge, and noting concern that former Rule allowed period to begin upon actions of police as opposed to prosecutors).

court had issued a warrant for Gottschalk's arrest based upon the Bethel indictment. The State informed us at oral argument that if Gottschalk were to be released on the petition to revoke probation, the Department of Corrections would have asked the superior court to schedule a hearing at which Gottschalk could be served with the Bethel warrant.

Professor LaFave points out that Alaska is the only state to have a speedy trial rule which is dependent on the service of the charging document. Other states initiate their speedy trial time periods from arrest (Arizona), entry of plea (Colorado), indictment or information (Idaho), arraignment (Kansas), or first appearance (Maryland) (for example).[3] Thus, other states have not had to address the issue of when the charging document is served for purposes of a speedy trial rule.

The purpose of Criminal Rule 45 is to protect a defendant's right to have the criminal charges which the State has brought against him resolved within a reasonable period of time. Although the particular time period is to some degree arbitrary, the purpose of the rule is to set an exact time when the rule starts and an exact time when it ends. Unfortunately, the rule does not establish when a charging document is "served." This flaw in the rule creates uncertainty about when the time period begins.

Gottschalk has a strong argument that he was served when the State gave him a copy of the charging document in court at the direction of the judge. There is an argument that the Bethel District Attorney's Office had constructive notice that Gottschalk would be given a copy of the indictment. But the logic of Gottschalk's argument would extend to many other situations. Under the argument he advances, if a police officer or correctional officer, who was dealing with Gottschalk on an unrelated matter, gave him an informational copy of the indictment, Gottschalk would have been "served" for purposes of starting Criminal Rule 45. Or, in a civil case involving child custody, an assistant attorney general might introduce a copy of Gottschalk's indictment, starting the rule. And

yet the prosecuting authorities in Bethel, where the case originated, would probably not have notice that the Criminal Rule 45 clock had started.

We conclude that Criminal Rule 45 must have a clear and exact starting date. In order to eliminate any confusion as to when the Criminal Rule 45 clock starts, we believe that the defendant must be formally served under Criminal Rules 4 or 9 or formally arraigned on the charges under Criminal Rule 10. We do not believe that the criminal rules authorize informal service such as occurred in Gottschalk's case when he was handed an informational copy of the indictment.

Gottschalk has not made any showing that he was prejudiced by the State's failure to formally serve him with the Bethel felony DUI charge. He had an attorney to represent him on the petition to revoke and to assist him in preparing his defense. Gottschalk was already aware of the possibility of the felony DUI charge because of the petition to revoke probation and the discovery that he had received because of the petition.

*Conclusion*

We accordingly conclude that for purposes of Criminal Rule 45, Gottschalk was not "served" in this case when the State gave him a copy of the indictment in court on the petition to revoke his probation. Rather, he was served, for purposes of Criminal Rule 45, when he was formally served with the charge on October 8, 2003. Therefore, the State did not violate Criminal Rule 45. We reverse the superior court's order dismissing the case.

REVERSED and REMANDED.

MANNHEIMER, Judge, concurring.

I agree with my colleagues that Criminal Rule 45 was not violated in this case. I further agree that the facts of this case demonstrate that there is a problem with the way that Rule 45(c)(1) defines the starting date for the speedy trial clock.

---

**3.** 4 Wayne R. LaFave et al., *Criminal Procedure*     § 18.3(c) at 698 n. 65 (2d ed.1999).

*Background of the provision at issue in this case*

Criminal Rule 45 specifies the time limit for bringing a defendant to trial. Prior to 1993, the starting date for calculating Rule 45 was "the date [on which] the defendant [was] arrested [or] initially arraigned, or ... the date [on which] the charg[ing document was] served upon the defendant, whichever [was] first". But, as explained in the majority opinion, the rule was amended in 1993 to address a concern voiced by the Department of Law.

The Department's concern was that police agencies might trigger Rule 45 by making an arrest, or even by filing a complaint, in circumstances where the Department had not yet determined that the case should be prosecuted, or that it could be prosecuted successfully. The Department suggested that the Rule 45 starting date should hinge on the formal initiation of the charge—under the assumption that this would not happen unless and until the Department had screened and approved the charging decision.

The Criminal Rules Committee recommended this change to the Alaska Supreme Court, and the supreme court approved the change in April 1993. See Supreme Court Order No. 1127, which took effect July 15, 1993. As a result of this 1993 amendment, Rule 45(c)(1) now states that, in most instances, the starting date for calculating Rule 45 is the date on which "the charging document is served upon the defendant".

*The legal distinction between receiving a copy of a document and being "served" with that document*

When we speak of "serving" a document that initiates a lawsuit, we mean something different from simply handing or mailing a

copy of the document to the person affected (acts that normally would be sufficient to constitute "service" of a later pleading, once the lawsuit has begun). The law imposes special rules governing the service of the initial complaint because that act of service must accomplish two distinct things: not only (1) notifying the defendant of the allegations against them, but also (2) establishing the court's jurisdiction over the person of the defendant—so that the court can lawfully direct the defendant to respond to the allegations in the complaint and, if those allegations are ultimately proved, so that the court can issue a judgement that will bind the defendant.

In civil cases, unless there is proper service of a summons and a complaint as specified in Alaska Civil Rule 4, the court lacks personal jurisdiction over the defendant.[1] And if the court lacks personal jurisdiction, any judgement the court enters against the defendant is void.[2]

Personal jurisdiction over the defendant is also crucial in criminal cases. As in civil cases, the requisite personal jurisdiction can be obtained by the service of a summons and a complaint. The manner for doing this is prescribed in Alaska Criminal Rule 4 and Alaska Civil Rule 4(d).[3] But in many (if not most) criminal cases, the court obtains jurisdiction over the defendant's person by literally seizing the defendant—either pursuant to a warrant as provided in Criminal Rule 4,[4] or by taking custody of the defendant following the defendant's arrest without a warrant (in those instances where a police officer or a private person is authorized to arrest a suspect without a warrant).[5]

When personal jurisdiction over the defendant is obtained by service of a summons and a complaint, the defendant receives the charging document at the same time that

1. *Department of Corrections v. Kila, Inc.*, 884 P.2d 661, 662 (Alaska 1994); *Valentine v. Roberts*, 1 Alaska 536, 539, 546–49, 552 (D.Alaska 1902).

2. *Kila*, 884 P.2d at 662; *Valentine*, 1 Alaska at 546–49, 552.

3. Civil Rule 4(d) applies to the service of a summons in a criminal case because Criminal Rule 4(c)(3) declares that a criminal summons may be

served "in any ... manner provided for service of process in civil actions".

4. See *In re Hernández*, 5 Alaska 421, 433 (D.Alaska. Terr.1915): "[T]he record shows that [the judge] got jurisdiction of the [defendant's] person by having him arrested on [a] warrant and brought before him."

5. *See* AS 12.25.010—040.

personal jurisdiction is established. But when personal jurisdiction over the defendant is obtained by arrest, the charging document is normally not served at the same time.

When an arrest is made without a warrant, the charging document will, of necessity, be drawn up later. Criminal Rule 5(a)(5) acknowledges this fact by expressly directing the government to promptly file a written complaint: "When[ ] a person arrested without a warrant is brought before a judge or magistrate [for their initial appearance], a complaint shall be filed forthwith."

But even when a complaint has already been filed, and the arrest is conducted pursuant to a warrant issued on that complaint (see Criminal Rule 4(a)(1)), the arrest will generally take place before the defendant receives a copy of the complaint. Under Rule 4(c)(3), the officers making an arrest upon a warrant need not possess a copy of the warrant, much less a copy of the complaint. Criminal Rule 4(c)(3) requires only that the officers inform the defendant that a warrant has indeed been issued, and upon what charge. If the defendant asks to see a copy of the warrant, and the arresting officers do not have one, Rule 4(c)(3) states that the police "shall show the warrant to the defendant as soon as possible".

In these cases, defendants will sometimes receive a copy of the complaint before they go to court for their initial appearance. But Criminal Rule 5(c)(2) declares that the defendant must receive a copy of the complaint at their initial appearance if no copy has previously been delivered to them.

As a result of these various provisions of the Criminal Rules, a person who is arrested (with or without a warrant) and who remains in custody may wait as long as 24 hours before seeing a copy of the complaint. (Criminal Rule 5(a)(1) establishes 24 hours as the outer time limit for conducting the defendant's initial appearance before a judicial officer.) But with the service of that complaint, the court obtains full authority to entertain the criminal proceeding against the defendant.[6]

Thus, there are two crucial aspects to the initiation of a criminal prosecution: the assertion of personal jurisdiction over the defendant, and the act of providing the defendant with a copy of the charging document. When the prosecution is initiated by the service of a summons and complaint, the assertion of personal jurisdiction (*i.e.*, the service of the summons) occurs contemporaneously with the defendant's receipt of a copy of the complaint. When the prosecution is initiated by an arrest, the assertion of personal jurisdiction (*i.e.*, the physical seizure of the defendant's person) precedes the defendant's receipt of a copy of the complaint by as much as 24 hours. But in either instance, it is the assertion of personal jurisdiction that makes the defendant's receipt of the charging document a "service" of that document.

*The problem in this case: the superior court had physical custody of the defendant, and personal jurisdiction over him, but on a different matter*

In my discussion of instances where the court obtains personal jurisdiction over the defendant through an arrest, the implicit assumption was that the defendant's arrest was conducted for the purpose of holding the defendant to answer one or more criminal charges arising from the incident that provided the basis for the arrest.

AS 12.25.160 defines "arrest" as "the taking of a person into custody in order that the person may be held to answer for the commission of a crime". Thus, not all acts of taking a person into custody constitute an "arrest"—for there are times when people are taken into custody for reasons other than holding them to answer for a crime. And in such instances, this Court has repeatedly held that the act of taking a person into custody does not constitute the commencement of a criminal proceeding.

For example, in *Lindsay v. State*, 698 P.2d 659 (Alaska App.1985), the police interviewed the defendant concerning his potential involvement in a robbery. The police did not formally arrest Lindsay, and he was allowed

---

**6.** *See Drahosh v. State*, 442 P.2d 44, 45–46 (Alaska 1968).

to return home after the interview.[7] However, this Court ruled that, given the circumstances of the interview, Lindsay had been in custody for *Miranda* purposes.[8] The next question was whether this custodial interview should be deemed an arrest for purposes of triggering Criminal Rule 45. Based on the definition of "arrest" codified in AS 12.25.160, we concluded that the answer was "no"— because when the police took Lindsay into custody, they did not do so for the purpose of holding him to answer for a crime. *Id.*, 698 P.2d at 663.

We reached a similar conclusion in *Cannizzaro v. State*, 765 P.2d 110 (Alaska App. 1988). The defendant in *Cannizzaro* failed to appear for a scheduled court hearing on his motion to modify his sentence, and the judge issued a bench warrant for the defendant's arrest.[9] Cannizzaro was picked up on other charges and, while he was in jail, he was served with this bench warrant.[10]

A little over three months later, a grand jury indicted Cannizzaro on a charge of failure to appear, based on his failure to appear at the sentencing hearing. Cannizzaro was arraigned on this charge, and his trial was scheduled for three months in the future.[11] But a week before his scheduled trial, Cannizzaro moved to dismiss the charge on Rule 45 grounds. He contended that the service of the bench warrant had constituted the commencement of the criminal proceeding for failure to appear, and that therefore the State had exceeded the allowed time for bringing him to trial.[12]

We rejected Cannizzaro's argument:

> [The] bench warrant did not charge Cannizzaro with a crime or command his arrest for the commission of a crime. Cannizzaro was not "held to answer" for a new charge [when he was] arrest[ed] on the warrant. Rather, his arrest [served] only to secure his presence for [the] sentencing proceedings he had previously missed. Because Cannizzaro was not arrested for

purposes of Criminal Rule 45 when he was served with the bench warrant ..., his ... arraignment on the indictment was the event that triggered the 120–day speedy trial period.

*Cannizzaro*, 765 P.2d at 112.

The problem in the present case is that even though Gottschalk was arrested, and even though his arrest was based, in part, on his act of driving under the influence, Gottschalk was not arrested so that he could be held to answer a charge of driving under the influence (or any criminal charge). Rather, Gottschalk was arrested for violating his probation.

Gottschalk was on probation from an Anchorage criminal case (File No. 3AN–98–4387 Cr). In March 2003, Gottschalk violated his probation by (1) leaving his region of residence without his probation officer's permission, (2) consuming alcohol, and (3) driving a motor vehicle under the influence. Gottschalk was arrested for these probation violations, and he was brought to Anchorage for probation revocation proceedings.

In this way, Gottschalk's case is similar to *Cannizzaro*. As was the case in *Cannizzaro*, some of Gottschalk's post-sentencing conduct constituted a new crime, and it was foreseeable that he might be charged with that crime. But Gottschalk's arrest in March 2003 was not done for the purpose of holding him to answer a new criminal charge. Rather, Gottschalk was arrested because there was probable cause to believe that he had violated the terms of his probation in the 1998 Anchorage case.

Three and a half months later, in early July 2003, while Gottschalk was in jail in Anchorage, a Bethel grand jury indicted him for his act of driving under the influence, and the superior court issued an arrest warrant based on this indictment. A member of the Anchorage District Attorney's office faxed a copy of the Bethel indictment to Gottschalk's attorney, and Gottschalk personally received

---

7. *Lindsay*, 698 P.2d at 660.

8. *Id.* at 661.

9. *Cannizzaro*, 765 P.2d at 110.

10. *Id.*

11. *Id.*

12. *Id.* at 110–11.

a copy of this Bethel indictment on July 9, 2003, when the parties were in court in connection with the Anchorage probation revocation proceeding. But Gottschalk was not arrested on the Bethel indictment until October 8, 2003 (when he was served with the superior court's warrant), and Gottschalk's initial appearance on the Bethel indictment did not occur until the following day. (This initial appearance took place in the Anchorage superior court.) Thus, not until October did the superior court establish personal jurisdiction over Gottschalk to try him for the crime charged in the indictment.

Criminal Rule 45(c)(1) does not expressly speak of personal jurisdiction. Rather, the rule says that the time for bringing the defendant to trial is calculated from the date on which the charging document is "served" on the defendant. But, as I have explained here, "service" of a criminal charge requires not only delivery of a copy of the charging document but also the establishment of personal jurisdiction over the defendant.

Just as a potential defendant in a civil lawsuit might learn of the lawsuit and might even obtain a copy of the complaint without ever being properly served, so too a defendant in a criminal proceeding might obtain a copy of the complaint or indictment without ever being summoned or arrested. In both the civil and the criminal context, even though the defendant might possess a copy of the complaint, the court would be powerless to proceed against the defendant until, through the act of summons or arrest, the court established jurisdiction over the defendant's person.

That was the situation in Gottschalk's case when he received a copy of the Bethel indictment on July 9th. Gottschalk now had a copy of the charging document, but he was not "served" in any meaningful sense because the superior court had yet to establish personal jurisdiction over Gottschalk in the Bethel criminal case—jurisdiction that was

necessary before the court could call upon Gottschalk to answer the Bethel indictment.

For these reasons, I concur with my colleagues that Rule 45 was not violated in Gottschalk's case. This is not to say, however, that I think this result is a good one. Gottschalk's case highlights a problem with the present formulation of Rule 45(c)(1).

Normally, there is no problem with having the Rule 45 starting date hinge on the "service" of the charging document—because, in a typical case, the State will not have physical custody of the defendant when the State decides to file a criminal charge, and thus the State will be motivated to promptly establish personal jurisdiction over the defendant through either the service of a summons or an arrest.

But when, as in Gottschalk's case, the defendant is already in custody in connection with another criminal proceeding, and the State files new charges, there is no pressure on the State to summon or arrest the defendant on the new charges, or to have the defendant arraigned on the new charges. Unless the defendant learns of the new charges and affirmatively demands arraignment on those charges, the Rule 45 "clock" might not be triggered for months or even years—if, for instance, the defendant's new criminal conduct constitutes a violation of the defendant's probation in an earlier case, and the defendant is sentenced to serve a lengthy term of imprisonment as a result of this probation violation.

For this reason, I think that the supreme court should direct the Criminal Rules Committee to consider how Criminal Rule 45(c)(1) might be amended to cure this problem.