Ernest Junior DANIELS, Danny Daniels, and
Ira Clifford Ellison, Appellants,

v.

STATE of Alaska, Appellee.

No. 295.

Supreme Court of Alaska.

Jan. 30, 1964.

James J. Delaney, Jr., Plummer, Delaney
& Wiles, Anchorage, for appellants Ernest
Junior Daniels and Danny Daniels.

Joe P. Josephson, Anchorage, for appellant Ira Clifford Ellison.

James C. Merbs, Dist. Atty., and Dorothy
Awes Haaland, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND
and AREND, JJ.

AREND, Justice.

On the early morning of March 3, 1962, it
was discovered that the warehouse of K &
L Distributors (hereinafter referred to as
K & L) at Spenard had been broken into
and that United States coin and currency
and assorted cases of liquor had been stolen
from the burglarized premises. A truck
belonging to K & L had also been taken
from the warehouse and used to haul away
the liquor. The truck, with most of the
liquor still aboard, was found abandoned in
a ditch where it had evidently been run off
the road. This led to the discovery of the
burglary and larceny.

The appellants were jointly indicted for
the two crimes mentioned, and were later
tried by jury and convicted. They urge reversal of their convictions on the grounds
that the trial court erred (1) in denying

their motion for judgment of acquittal for insufficiency of evidence; (2) in refusing to strike the testimony of the witness Kirschner as irrelevant and prejudicial; and (3) in failing to instruct the jury that the comments, statements and admissions of one defendant cannot be used against the other defendants in the absence of a conspiracy.

We summarize the testimony in the record connecting the appellants with the crime charged and view it in the light most favorable to the state,[1] as follows:

David Swanagan, age 24, a professional burglar and convicted felon, dependent in part upon the recommendation of the district attorney's office for the outcome of a deferred sentence he was then laboring under and aware of the fact that he could be prosecuted as an habitual criminal, testified that he met the appellants Ernest Daniels and Ira Ellison in an Anchorage cafe between three and five o'clock on a morning early in March, 1962. Ernest Daniels asked Swanagan if he had a truck or pickup or knew where there was one, stating that they had burglarized a place and taken some liquor which was in a semi in a ditch. Ellison was present during this conversation and also asked where they could obtain a truck.

Swanagan further testified that on the following day, March 4, he met the appellant Danny Daniels—brother of Ernest—in an arcade in Anchorage, at which time Danny said that if he could ever lay his hands on one Ray Masters he would break his neck for running the truck (semi) into the ditch. Later that same day Swanagan met all three of the appellants and at that time Ernest told him, in the presence of Danny and Ellison, that the three of them had loaded the K & L liquor onto a K & L truck and that Danny and Ellison opened the K & L safe in the warehouse. At this meeting Danny and Ellison both commented that they would like to get ahold of Ray Masters for running the truck into the ditch.

The only other evidence introduced by the prosecution as connecting the appellants with the crimes charged was the testimony of eighteen-year-old Queena Ann Kirschner, an acquaintance of the appellants and onetime girl friend of Ellison. Miss Kirschner testified that at some time prior to March 3, 1962, perhaps as early as January, she had gone for a car ride with Ellison and Danny out in Spenard by K & L Distributors. While there the two appellants threw a camera and some other things out of the car and then buried them. On the first or second day of March, 1962, she went for a ride again to the K & L vicinity, this time with Ernest Daniels and Ellison. They parked the car and sat there for about a half hour, watching two police patrol cars, among other things. The police were making a routine check of the area with their spotlights.

We shall consider first the appellants' contention that the uncorroborated testimony of Swanagan as to admissions made to him by the appellants is insufficient by itself to sustain the convictions because he is a convicted felon whose sentence was then in a deferred status. The appellants urge this court to apply the same rule to the testimony of a convicted felon that is applied to the testimony of an accomplice for the reason that each is motivated by the same impulse to testify against the accused, that is, the hope of purchasing immunity from punishment by falsely accusing and procuring the conviction of the accused.[2]

█ The rule in Alaska requiring that the testimony of an accomplice be corrobo-

---

1. Hobbs v. State, 363 P.2d 357, 358 (Alaska 1961); Davis v. State, 369 P.2d 879, 881 (Alaska 1962).

2. See Oxenberg v. State, 362 P.2d 893, at page 896 (Alaska 1961), in which we stated: "The requirement of corroboration was based historically on the assumption, or suspicion, that ·the accomplice might expect to purchase immunity from punishment by falsely accusing and procuring the conviction of others. Implicit here was the assumption that the accomplice was not to be trusted in the story that he told."

rated to sustain a conviction is statutory.[3] We have no similar statute requiring corroboration for the testimony of a convicted felon and no such substantive rule existed at common law [4] or can be found in the case law of this state.[5] We believe that, if the testimony of a convicted felon is to require corroboration to sustain a conviction, that the legislature is the one to say so. Absent a statute to the contrary, we hold that a conviction may be had upon the uncorroborated testimony of a person convicted of a felony.[6]

The appellants next contend that all of the testimony of Miss Kirschner should have been stricken because none of it could be said to connect the appellants with the crime or establish the corpus delicti and because it tended to show the commission of other crimes and was therefore prejudicial. This argument goes far beyond the issue raised by the specification of error upon which it is predicated. That specification charged merely that "over objections of defense counsel, the court permitted the introduction of other crimes into evidence." Nowhere in their brief do the appellants tell us when or in what terms they voiced their objection below; [7] so we have had to search out the matter for ourselves.

We find in the record that, after Miss Kirschner had given her account, on direct examination, of the two trips she made with the appellants to the vicinity of the K & L warehouse and on cross examination stated that the burial of the camera and some other items occurred on the first trip sometime in January, 1962, the following objection was made on behalf of the appellants:

MR. DELANEY: Your Honor, I— I ask that her [Miss Kirschner's] entire testimony referring to burial of anything be striken [sic] and the jury instructed not to—to disregard it on the grounds that it has no possible relevancy to this and it's highly prejudicial to these boys in this case.

■ It is clear that in the trial court the appellants addressed their objection to only that portion of Miss Kirschner's testimony which related to the burying of the camera and other items. The remainder of her testimony was not objected to below and, therefore, we refuse to consider any argument here against its admission by the trial court.

■ As for the testimony concerning the burial incident we agree with the appellants that it was irrelevant, however, we fail to see wherein the court's refusal to strike it constituted prejudicial error. The theory of the appellants is that the jury could not help but be curious about this excursion [8] to bury a camera and could have reasoned therefrom that the appellants had stolen the camera and other objects buried with it and were hiding the loot. We do not believe that the statements made by Miss

3. AS 12.45.020.

4. See State v. Harris, 10 N.J.Misc. 236, 158 A. 848 (1932).

5. At common law the testimony of a convicted felon was held to be incompetent. United States v. Barefield, 23 F. 136 (D. Tex.1885). In Alaska this disqualification is removed by Civ.R. 43(g) (1) [b], made applicable to criminal trials by Crim.R. 26(a).

6. We note that the trial court in one of its instructions admonished the jury that they were to consider with caution and weigh with great care all evidence relating to any admissions or incriminatory statements made by a defendant outside of court. Crim.R. 30(b) (4) required this instruction to be given.

7. Supreme Ct.R. 11(a) (6) provides in part: "When the error alleged is to the admission or rejection of evidence, the specification shall quote the grounds urged at the trial for the objection and the full substance of the evidence admitted or rejected, and refer to the page number in the transcript as contained in the record on appeal where the same may be found."

8. The appellants refer to the trip to Spenard to bury the camera as a "nocturnal excursion," but there is no testimony in the record that this trip was made at night. In fact Miss Kirschner stated that it was made in the daytime.

Kirschner concerning the burial of the camera and other items, none of which were in any way connected with a larceny, could be fairly said to constitute testimony of the commission of another crime which should have been stricken as prejudicial. Furthermore, we find that even if that part of her testimony objected to below had been stricken there is no reasonable probability that a fair-minded jury would have arrived at a different verdict.[9] We find no prejudicial error on this point.

Lastly, the appellants claim that the trial court erred in failing to instruct the jury that the admissions of Ernest Daniels to Swanagan could not be used against the other two appellants since they were not present when the admissions were allegedly made. This claim is without merit because the record reveals that Ellison was present on the first day when Ernest made the admissions in question and on the afternoon of the following day the same damaging admissions and more were made by Ernest to Swanagan in the presence of both Danny and Ellison.

Even if Ernest's admissions had not been made in the presence of the other two appellants, the failure of the trial court to give the instruction which the appellants claim should have been given would not have been error because such an instruction was never requested by the appellants.[10] Furthermore, the instruction in question is not one of those which under our rules the trial courts are required to give on all proper occasions, whether or not requested.[11]

So, considering the evidence in the light most favorable to the state and all rea-

sonable inferences which the jury may have drawn from such evidence and finding no error in the specific matters charged against the trial court, we conclude that the verdict of the jury was justified and that the appellants' motion for judgment of acquittal was properly denied.[12]

The judgment is affirmed.

---

9. See State v. Dutton, 83 Ariz. 193, 318 P.2d 667, 671 (1957). See also Crim.R. 47(a) which provides that any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

10. Crim.R. 30(a) provides, in part, that no party may assign as error any portion of the charge to the jury or omission therefrom unless he objects thereto before the jury retires to consider its ver-

dict, stating distinctly the matter to which he objects and the grounds of his objections. See also Rank v. State, 373 P.2d 734, 738 (Alaska 1962).

11. The basic mandatory instructions required to be given on all proper occasions in a criminal case are set forth in Crim. R. 30(b).

12. See Goss v. State, 369 P.2d 884, 884–885 (Alaska 1962).