Peter P. LINDSAY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–212.

Court of Appeals of Alaska.

April 19, 1985.

Arthur S. Robinson, Soldotna, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Peter P. Lindsay was found guilty, following a jury trial, of theft by receiving in the first degree in violation of AS 11.46.120 and AS 11.46.190. Lindsay appeals his conviction, arguing that certain evidence should have been suppressed, that proceedings against him should have been dismissed pursuant to Alaska Rule of Criminal Procedure 45 and that denial of his continuance motion constituted reversible error. We hold that evidence introduced at trial, including Lindsay's taped confession and stolen goods recovered from Lindsay's residence, were obtained by state troopers as a result of an unlawful arrest. Consequently, his conviction must be reversed.

On the evening of February 19, 1983,[1] state troopers received a tip suggesting that furs stolen from a Sterling retailer were stored on Lindsay's property. Troopers Hagan and Preshaw, after interviewing the informant, approached Lindsay at the home of his friends, the Bishops, at 2:30 a.m. on February 20. According to Trooper Hagan, the troopers did not have probable cause to arrest Lindsay, a point which the state does not contest. As a result of this contact, Lindsay accompanied the troopers to trooper headquarters seven or eight miles away, riding in the front seat of an unmarked police vehicle. Upon arrival at headquarters, Lindsay was taken to an interview room where he was questioned. After forty minutes of questioning, during which Lindsay repeatedly denied any knowledge of the fur robbery, Lindsay was asked to consent to a search of his property. He signed two consent to search forms provided by Trooper Hagan. Fifteen to twenty minutes later Lindsay admitted knowing where the stolen furs were. He was then advised of his *Miranda* rights.[2] Beginning at 4:26 a.m., Lindsay gave a taped statement to Trooper Hagan amounting to a confession to the crime for which Lindsay was convicted. Trooper Hagan informed Lindsay, on tape, that he would be charged for his involvement in the crime, but told him he was not then under arrest. Following the conclusion of the taped statement, the troopers, Lindsay, and other law enforcement officials went to Lindsay's residence, where a search was conducted and the stolen furs were recovered. Lindsay was taken back to headquarters and was then returned to the Bishop residence.

## SUPPRESSION OF EVIDENCE

Lindsay argues that at 3:25 a.m., when he signed the consent to search form, he was under arrest despite the fact that the troopers at that time lacked probable cause. The trial court agreed that Lindsay was in custody, but held that Lindsay was

---

1. The facts presented here are summarized from testimony given at the hearing held on Lindsay's pretrial motion to suppress, and from the trial court's findings of fact in its decision on that motion.

2. Trooper Hagan testified that he advised Lindsay of his *Miranda* rights at this time. Lindsay alleges he was never advised of these rights, and that his taped acknowledgement of having been

given his "rights" form referred to the consent to search form. The trial court believed Trooper Hagan's account. We need not address this conflict of accounts since the suppression issue is resolved without reaching the question of whether a valid *Miranda* waiver took place.

Similarly, we need not address Lindsay's contention that his statement was not voluntarily given.

not under arrest. In the trial court's view he was subject only to an investigative detention, and the troopers had the "reasonable suspicion" necessary to justify such detention at least until 3:25 a.m. *See Coleman v. State*, 553 P.2d 40 (Alaska 1976). The state argues that Lindsay was not in custody at all, characterizing Lindsay's presence in the interrogation room as voluntary.

■ Whether a seizure has occurred is a question of fact, and the finding of the trial court will be disturbed only if clearly erroneous. *Waring v. State*, 670 P.2d 357, 364 n. 15 (Alaska 1983). In *Waring*, the test for determining whether a seizure occurred was explained:

> [W]e will employ an objective standard to determine whether or not a seizure has occurred, i.e., whether or not a reasonable person would believe that he or she was free to go. We recognize that upon being confronted by a police officer, the average person would feel an obligation to respond to the officer's questions and not to walk away. Such a confrontation, therefore, will amount to a seizure "only if the officer added to those inherent pressures by engaging in" "conduct which a reasonable man would view as threatening or offensive even if coming from another private citizen." 3 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 9.2, at 53, 54 (1978) (footnote omitted). "[T]he critical inquiry would be whether the policeman, although perhaps making inquiries which a private citizen would not be expected to make, has otherwise conducted himself in a manner consistent with what would be viewed as a nonoffensive contact if it occurred between two ordinary citizens." *Id.*

670 P.2d at 364 (footnote omitted). The facts testified to at the suppression hearing could support a conclusion that Lindsay was not present at trooper headquarters voluntarily. Lindsay was approached at the Bishops' residence at 2:30 in the morning. He testified that after leaving the house with the troopers, he was told in a commanding tone to get into the police car (his own car was also in the driveway). He was then transported seven or eight miles, with his return transportation largely dependent on the troopers. He was neither told he was under arrest nor told he was free to leave. Bishop was not permitted to see him at trooper headquarters. The trial court's conclusion that Lindsay was in custody was not clearly erroneous.

■ Having accepted the conclusion that Lindsay was in custody, that is, that he was seized for fourth amendment purposes, we consider whether the level of custody involved was that of an investigative detention or an arrest. *See Howard v. State*, 664 P.2d 603, 608 (Alaska App.1983). An arrest can be supported only by probable cause, which was lacking here. *Id.*

■ Whether a seizure is an investigatory detention or an arrest turns on the "duration and intrusiveness of the restraint." *Id.* In *Howard* we set forth particular factors to be considered in making this determination. Among those factors is the requirement that the investigative detention be for "a limited and specific inquiry, *i.e.*, the police must be diligently pursuing a means of investigation which is soon likely to resolve the matter one way or the other. Once the inquiry is completed the person detained must be freed or arrested." *Id.* at 609–10. Also listed are the requirements that the detention be of brief duration, and that it not require the person stopped to travel an appreciable distance. *Id.*

In *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the Supreme Court recently commented on the limits to the level of custody which can be justified based on less than probable cause.

> *Terry* and its progeny ... created only limited exceptions to the general rule that seizures of the person require probable cause to arrest. Detentions may be "investigative" yet violative of the Fourth Amendment absent probable cause. In the name of investigating a person who is no more than suspected of criminal activity, the police may not

carry out a full search of the person or of his automobile or other effects. Nor may the police seek to verify their suspicions by means that approach the conditions of arrest. *Dunaway v. New York,* [442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979),] made this clear. There, the suspect was taken to the police station from his home and, without being formally arrested, interrogated for an hour. The resulting incriminating statements were held inadmissible: reasonable suspicion of crime is insufficient to justify custodial interrogation even though the interrogation is investigative. *Id.,* 442 U.S., at 211–212, 99 S.Ct., at 2255–2256. *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), are to the same effect.

460 U.S. at 499, 103 S.Ct. at 1325.[3]

As in *Dunaway,* the subject here was taken from a neighbor's home in a police vehicle to the police station and, without being formally arrested, interrogated for nearly an hour. While in the present case there is more support for the position that the whole encounter was voluntary, once that position is rejected the only relevant difference between this case and *Dunaway* appears to be twenty minutes. If we apply the *Howard* factors, listed above, we note that Lindsay was transported a great distance, he had been in custody for fifty-five minutes before he signed the consent to search form after forty minutes of interrogation, and he was interrogated for forty minutes despite repeated and continuous denial of any involvement in the robbery.

■ Lindsay's detention exceeded the limits of an investigative detention. He was unlawfully arrested. His consent to the search of his property, and the evidence seized during that search, are the "fruits" of that "poisonous tree." *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The same is true for the taped statement taken after an additional hour of custody and questioning beyond the time Lindsay signed the search consent forms. Because no insulating factor, such as passage of time without questioning or illegal custody, change of conditions, change of location, or change of parties involved, points to an attenuation of the taint of the illegal custody, this evidence should have been suppressed. *See* id.; *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

## CRIMINAL RULE 45

Lindsay argues that the case against him must be dismissed because he was not tried within 120 days of his arrest as mandated by Alaska Rule of Criminal Procedure 45. Lindsay argues that he was arrested when he was initially detained on February 20, 1983.

Criminal Rule 45 provides in pertinent part:

A defendant charged with a felony, a misdemeanor, or a violation shall be tried within 120 days from ... the date the defendant is arrested, initially arraigned, or from the date the charge (complaint, indictment, or information) is served upon the defendant, whichever is first.

Judge Cranston ruled that the Criminal Rule 45 time period did not start until Lindsay's formal arrest in April, and that the 120-day limitation was not exceeded. We have earlier determined that Lindsay was arrested for fourth amendment purposes on February 20, 1983. If we decide that Lindsay was arrested for Criminal Rule 45 purposes on February 20, 1983, then the period of time which elapsed before trial must be recalculated.

We believe that there are policy reasons for interpreting the word "arrest" differ-

**3.** In *Royer,* the following police conduct, taken as a whole, was held to amount to an arrest: (1) the police asked for and examined the defendant's airline ticket and driver's license; (2) they identified themselves as narcotics agents; (3) they told the defendant he was suspected of transporting drugs; (4) they asked him to accompany them to a room forty feet away; (5) they retained his ticket and license; and (6) they did not indicate he was free to leave. 460 U.S. at 501–02, 103 S.Ct. at 1326–27.

ently for fourth amendment purposes than for Criminal Rule 45 purposes. We believe that we should be more inclined to find an arrest when we are considering whether a person may have been illegally detained than we should be when we are determining if there has been an arrest for Criminal Rule 45 purposes. When we are considering whether a person has been illegally detained for fourth amendment purposes, we need to be particularly careful to eliminate any situation where a person may be coerced into providing evidence against himself because of an illegal detention. On the other hand, with Criminal Rule 45, we need a clear starting point which initiates the 120-day period.

In interpreting the word "arrest" for Criminal Rule 45 purposes we have relied on AS 12.25.160. *Greenawalt v. Anchorage*, 692 P.2d 983 (Alaska App.1985); *G.D. v. State*, 681 P.2d 366, 367 (Alaska App. 1984). That statute reads as follows:

> Arrest is the taking of a person into custody in order that the person may be held to answer for the commission of a crime.

We note that the definition requires more than taking a person into custody; it refers to holding the person to answer for the commission of a crime. We think that this latter phrase refers to a situation where a person is formally arrested and charged with a crime. In the event that a person is formally arrested and charged with a crime, all of the parties to the transaction would have a clear warning that Criminal Rule 45 had commenced. We note that at the close of the police interview with Lindsay, the police told him that he would be charged with a crime but that he was not under arrest. Lindsay was not charged at that time and was returned to the Bishops' residence that morning. It appears quite probable that the police believed that Lindsay was never under arrest.

■ We note that the events other than arrest in Criminal Rule 45 which trigger Criminal Rule 45 tend to be more objectively definite times when the defendant is clearly charged with a specific crime: arraignment or when charges are actually served on the defendant. We believe that the term "arrest" needs to be similarly construed so that it does not include situations where an investigative detention slides over the line to become an arrest for fourth amendment purposes. We see the case before us as such a case. Even though we find an arrest for purposes of the fourth amendment, we conclude that under the facts of this case, Lindsay was not taken "into custody in order that [he might] be held to answer for the commission of a crime." We accordingly uphold Judge Cranston's decision that Criminal Rule 45 was not violated in this case.

REVERSED and REMANDED.

SINGLETON, J., concurs.

SINGLETON, Judge, concurring.

I join fully in the court's opinion. A person's speedy trial rights do not accrue until he is formally charged or formally arrested. Criminal Rule 45(c)(1). I believe a few additional remarks are necessary, however, to clarify the relationship between a fourth amendment seizure which is invalid because it exceeds the bounds of an investigatory stop and is not supported by probable cause and the commencement of a defendant's speedy trial rights under Criminal Rule 45. In *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), the Supreme Court applied the general rule that, subject to a few carefully circumscribed exceptions, a fourth amendment seizure without probable cause is invalid. A custodial stop based upon a reasonable suspicion is one exception to the rule. The Supreme Court was very careful not to describe all seizures that did not qualify as custodial stops as arrests. In *Howard v. State*, 664 P.2d 603, 608 (Alaska App.1983), we did divide all fourth amendment seizures into arrests and stops, but nothing in the opinion required us to do so. In retrospect it would have been more accurate, and more in keeping with Supreme Court precedents, to say merely that all fourth amendment seizures must be supported by probable cause unless they quali-

fy as custodial stops, and that an otherwise valid custodial stop may become invalid under the fourth amendment if it is unduly prolonged or involves unnecessary restraint.

Once it is clear that Lindsay was seized for fourth amendment purposes and did not voluntarily accompany the police to the station, it is clear that the seizure in terms of duration and restraint could not be characterized as a custodial stop. Consequently, probable cause was necessary to validate the seizure. Since it is conceded that probable cause was lacking, the seizure was invalid and its fruits must be suppressed. It is unnecessary to characterize what happened to Lindsay as an arrest for any purposes. Consequently, Lindsay's experience did not trigger commencement of his speedy trial rights under Criminal Rule 45.