**Dale M. GUNDERSEN, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

**No. A–2112.**

Court of Appeals of Alaska.

Feb. 10, 1989.

**438**

William Grant Callow, Anchorage, for appellant.

John E. McConnaughy, III, Asst. Mun. Prosecutor, James Ottinger, Mun. Prosecutor, and Jerry Wertzbaugher, Mun. Atty., Anchorage, for appellee.

OPINION ON REHEARING

Before BRYNER, C.J., SINGLETON, J., and STEWART, District Court Judge.*

SINGLETON, Judge.

Dale M. Gundersen has petitioned for rehearing, arguing that our opinion in

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. We stress that our focus of attention is on possible state or municipal interference with a defendant's rights while he or she is in custody on a charge of driving while intoxicated. Where the defendant is released on his or her own recognizance or bail, he or she is, of course, free, with or without the advice of counsel, to pursue an independent test through his or her own efforts and at his or her own expense. Where the defendant is out of custody, problems of state interference with the right to the independent test would seem to disappear, unless the court finds that some action by the police in fact prevented the person charged from subsequently obtaining an independent test. We agree with the dissent that the reference in the form warning to demanding a test or waiving it could be construed to be an interference with a suspect's right to obtain a test after he or she is released from custody. We disagree that the form, standing alone, is conclusive on this point in the absence of evidence that, but for the warning, an independent test would have been obtained.

In context, where a person claims that he or she gave up a right to an independent test in

*Gundersen v. Anchorage*, 762 P.2d 104 (Alaska App.1988) contains mistakes of fact that are of key importance to the decision.

At the outset, it is best to summarize our holding in our initial opinion. In that opinion, we noted that when a person is suspected of drunk driving and is required to submit to a breath test to determine the alcohol content of his blood, that person is entitled by statute to a roughly contemporaneous, independent, chemical test to verify the accuracy of the state's or the municipality's administered test.[1] *Gundersen*, 762 P.2d at 107–08. We held that the right to a contemporaneous, independent test must be asserted in a timely manner or it is forfeited. *Id.* at 109–11. We said that forfeiture may be relieved if the defendant can prove by a preponderance of the evidence that the police interfered with the exercise of the right to an independent test. Where interference is established, the defendant is entitled to have the results of the state's or municipality's test suppressed. *Id.* at 108–09 n. 2. Finally, we held that interference is a question of fact for the trial court and we will disturb the trial court's decision only if convinced that it is clearly erroneous.[2] *Id.*

reliance on misinformation from the police, a showing of prejudice is essentially a showing of causation. We have interpreted Judge Mason's holding as a finding that Gundersen failed to prove "causation," *i.e.,* that any of the alleged misinformation, either in the form warning or in the officer's statements, actually influenced Gundersen to give up an independent test. It appears that Judge Mason did not believe Gundersen's statements to the contrary.

2. Although there may be some evidence to support the trial court, a finding of fact is clearly erroneous when the reviewing court is left with the definite and firm conviction, based on the entire record, that a mistake has been committed. *Alaska Foods, Inc. v. American Mfr.'s Mut. Ins. Co.,* 482 P.2d 842, 848 (Alaska 1971). The clearly erroneous standard differs from the reasonable basis and substantial evidence tests applied in reviewing jury verdicts and administrative decisions. *Id.* at 846–47. However, the clearly erroneous standard does not simply mean that an appellate court believes it is more probable than not that the trial judge erred in his or her evaluation of the facts. Rather, the clearly erroneous standard means that "[w]e must be convinced, in a definite and firm way,

at 109. *See also Esmailka v. State,* 740 P.2d 466, 470 (Alaska App.1987) (in criminal cases, findings of fact by the trial court on issues other than the ultimate issue of guilt are reviewed under the same "clearly erroneous test" that applies in civil cases).

With this holding in mind, we now address Gundersen's petition for rehearing. Gundersen argues that we erred in concluding:

> Gundersen has presented no evidence to support the conclusion that the police acted arbitrarily or unreasonably in offering him a blood test instead of a urine test or attempting to preserve a sample of his breath.

*Gundersen,* 762 P.2d at 112. Gundersen points to the "Notice of Right to an Independent Test" and argues that the following language is inconsistent with our assumption:

> If you wish to have an independent test, you will be transferred to a local medical facility where a sample of your blood will be drawn by qualified personnel at no charge to you.

We recognize that Gundersen is arguing —and to an extent the dissent agrees—that

this warning would lead any reasonable person to conclude that an arrested person may not obtain an independent test other than a blood test. Gundersen maintains that this explains why those who do not like blood tests lack the contemporaneous evidence of an assertion of their right to an independent test. According to Gundersen and the dissent, this form of warning constitutes interference as a matter of law. A majority of this court disagrees. We conclude that the warning, while incomplete, does not establish interference as a matter of law. In our view, the totality of the circumstances must be considered in order to determine whether the defendant was prevented from obtaining a test that he or she would otherwise have obtained. In the absence of any evidence demonstrating that the police ignored a contemporaneous assertion of interest in an independent test, this form of warning does not establish interference as a matter of law. Whether the police interfered with a suspect's right to an independent test is a question of fact to be determined by the trial court in light of the totality of the circumstances. In reaching its conclusion, the court must con-

that a mistake has been committed. We must be well persuaded by the party seeking to set aside the trial judge's findings before we will hold he [or she] was wrong." *Id.* at 848.

The dissent misunderstands our holding. The dissent confuses a *prima facie* case with a right to relief as a matter of law. The trial court found, as a matter of fact, that the police had not interferred with Gundersen's right to an independent test. In order to overcome this finding, Gundersen must demonstrate that the finding was clearly erroneous. It is not enough for Gundersen to point to evidence which, had the trial court credited it, would have supported a finding in Gundersen's favor. The dissent seems to think that we are holding that a finding in Gundersen's favor would have been clearly erroneous. We reach no such conclusion and resolution of this case does not require such a conclusion.

The dissent apparently confuses our discussion of forfeiture with our discussion of causation and prejudice. In his argument to the trial court, and in his briefs in this court, Gundersen argued that he was entitled to an unambiguous and complete notice of the right to an independent test. He inferred a right to notice from the assumption that evidence of a knowing, intelligent, and voluntary waiver of the right to an

independent test was a prerequisite to admission into evidence of the municipality's breath test. We rejected this argument. Our discussion of forfeiture explained, in part, our rejection of Gundersen's argument. We did not mean to suggest that Gundersen forfeited his right to a test by not demanding it at the police station.

We separately considered Judge Mason's finding that any misinformation Gundersen received from the police did not influence his decision to forego an independent test. It was in this context that we considered the need on this record for "contemporaneous evidence" to establish that Judge Mason's findings were clearly erroneous. The fact that Gundersen ran into a parked car and the fact that the Intoximeter showed a .264 blood-alcohol level support inferences that Gundersen was drunk, that he knew he was drunk, and that he might be pessimistic about the effect of an independent test. The inferences are strengthened by Gundersen's discussion with the officer, and support Judge Mason's implicit conclusion that Gundersen's decision not to obtain a retest was independent of any misinformation he received. In the absence of any contemporaneous evidence that would contradict Judge Mason's conclusion, we are not prepared to find his conclusion clearly mistaken.

sider the form warning; in addition, however, the court may evaluate the credibility of the defendant, the plausibility of his contentions, the circumstances surrounding his arrest, the proof of his intoxication, any past experience he may have had with arrests for driving while intoxicated and with chemical tests for blood alcohol, and any other evidence which would support an inference that, but for the police action, the defendant would have obtained an independent test. On this record, the trial court's conclusion finding no interference with Gundersen's right to an independent test was not clearly erroneous. ·

■ Gundersen next complains of the factual assumptions implicit in the following comments:

There is nothing in the record to suggest that Gundersen wished a urine test or additional breath test as opposed to a blood test.

. . . .

... Gundersen does not point to anything in the record implying that he was personally discouraged from obtaining an independent test.

*Gundersen*, 762 P.2d at 109, 113. Gundersen makes two arguments concerning these statements. First, Gundersen argues that we have overlooked reasonable inferences that could be drawn from the form warning given to him by the police. Gundersen misunderstands the burden of proving that a trial court's factual finding is clearly erroneous. He did not assert a right to an independent test at the time his breath was tested by the police, nor did he subsequently obtain such a test within the prescribed time limits. Consequently in order to prevail, he must show that the police inter-

fered with his right to an independent test. In addition, because the trial court found against him on this point, it is necessary for him to establish that there was interference as a matter of law, *i.e.*, that the trial court's finding of no interference was "clearly erroneous." To sustain this burden, it is insufficient for him to argue that the form warning might have discouraged some hypothetical individual from pursuing an independent test. He must point to some contemporaneous evidence showing that he wished to have an independent test, but was prevented from obtaining one by police action or inaction.

■ Second, Gundersen argues that we have overlooked the affidavit which he filed in support of his motion to dismiss and attached as an appendix to his brief. In this affidavit, Gundersen indicates that he had a fear of blood tests, but would have asked for a second test on a different Intoximeter machine by a different operator, if given the opportunity.[3] Again, Gundersen overlooks the burden of proving that his right to an independent test was interfered with as a matter of law. Clearly, his subjective impressions, uncommunicated to the police, and his after-the-fact recollections of what he might have done under other circumstances, hardly constitute conclusive proof that the police interfered with his right to an independent test. Our comments refer to the absence of some contemporaneous evidence that at the time Gundersen declined the blood test, he asserted a right to an independent test or expressly requested an alternative test, such as an additional breath test. We adhere to our view that only contemporaneous assertions by Gunderson would establish interference as a matter of law. We

---

**3.** The affidavit reads in total:

I, Dale M. Gundersen, being first duly sworn on oath, do depose and say:
1. I am the defendant in the above-captioned case;
2. I have never had any blood extracted for the purpose of testing blood alcohol content and therefore I have no idea of how much blood must be taken;
3. I hate needles and was nervous and wary of blood extraction which discouraged me from submitting to the alternative test that was offered by the police;

4. I never had any idea how much it would cost me to have an independent analysis of my blood and therefore I had no idea if I could even afford the analysis if my blood was taken;
5. If I had known that there was a significant error factor in the breath test machine it would have influenced me to exercise my right to have an independent test;
6. If I had been given the option, I would have asked for a second test on a different machine by a different operator.

also adhere to our conclusion that there is no relevant contemporaneous evidence in the record that Gunderson was personally discouraged from obtaining an independent test or that he wished a urine test or an additional breath test as opposed to a blood test.

■ Gundersen next argues that we erred in concluding, "There is nothing in this record to suggest ... that an independent test, if obtained, would have been exculpatory." *Gundersen*, 762 P.2d at 114. Gundersen contends that there was a difference of opinion among those present at the scene of his accident as to whether there was an odor of alcohol about his person. He also points out that he accurately but slowly performed the field sobriety tests, which involved counting backwards and reciting the alphabet. This evidence, while certainly admissible and arguable to a jury regarding his state of intoxication, *see Denison v. Anchorage*, 630 P.2d 1001, 1003–04 (Alaska App.1981), does not establish that an independent test, if obtained, would have been exculpatory.

■ Finally, Gundersen objects to the following language in our opinion:

We note that Gundersen does not point to any specific evidence suggesting that, as his proposed instruction stated, "the person administering the test [failed to comply] with all of the required test procedures and safeguards."

*Gundersen*, 762 P.2d at 114. Gundersen argues that this comment overlooks the

evidence that the investigating officer failed: (1) to advise him not to belch for twenty minutes before and during the breath test, and (2) to observe him during the twenty-minute waiting period to ensure that he did not belch. In Gundersen's view, the operator's manual for the Intoximeter 3000 requires an operator to have the subject under observation for twenty minutes to ensure that no belching, vomiting, or smoking occurs. Gundersen points out that, based upon the operator's manual, he moved to strike evidence of the breath test. In rejecting this claim, the trial judge relied upon former AS 28.35.033(d) which appears, in all significant respects, identical to Anchorage Municipal Code (AMC) § 09.28.023(D).[4] The trial court then looked to 7 Alaska Administrative Code (AAC) 30.020(1) which provides:

The following procedure[s] must be used to obtain and analyze breath samples on the Intoximeter 3000

(1) observe the person to be tested, for at least 20 minutes immediately before testing, to ensure that the person does not regurgitate or place anything in his or her mouth during that period[.]

Gundersen does not argue that belching and regurgitation are synonymous. It therefore appears that Gundersen cannot point to any specific evidence suggesting that "the person administering the test [failed to comply] with all the required test procedures and safeguards." There is no evidence of noncompliance with the specific

4. Anchorage Municipal Code § 09.28.023(D) provides:

To be considered valid under the provisions of this section, the chemical analysis of the person's breath or blood shall have been performed according to methods approved by the Alaska Department of Health and Social Services. If it is established at trial that a chemical analysis of breath or blood was performed according to approved methods by a person trained according to techniques, methods and standards of training approved by the Department of Health and Social Services, there is a presumption that the test results are valid and further foundation for an introduction of the evidence is unnecessary.

Former AS 28.35.033(d) provides:

To be considered valid under the provisions of this section, the chemical analysis of the

person's breath or blood shall have been performed according to methods approved by the Department of Health and Social Services. The Department of Health and Social Services is authorized to approve satisfactory techniques, methods, and standards of training necessary to ascertain the qualifications of individuals to conduct the analysis. If it is established at trial that a chemical analysis of breath or blood was performed according to approved methods by a person trained according to techniques, methods and standards of training approved by the Department of Health and Social Services, there is a presumption that the test results are valid and further foundation for an introduction of the evidence is unnecessary.

test procedures and safeguards as set out in 7 AAC 30.020. We stress that the instructions given by the trial court would have permitted Gundersen to argue to the jury that the evidence in the record could justify the jury's rejection of the Intoximeter result.

In conclusion, in the view of a majority of this court, Gundersen's inability to point to any contemporaneous evidence that he wanted an independent test, that he sought but was denied information about an independent test, or that his efforts to obtain an independent test were otherwise interfered with is fatal to his claim that the police interfered with his right to an independent test as a matter of law. We are therefore not convinced that the trial court was clearly erroneous in rejecting Gundersen's contentions. Whether a trial court could have reasonably found, based on Gundersen's after-the-fact recollections and unarticulated subjective beliefs, and on assumptions about hypothetical responses of reasonable people to the form warning given, that Gundersen had been interfered with as a matter of fact, is not an issue before us in this appeal. For that reason, we wish to stress that our decision was not intended to approve of the form warning given by the police in this case. At the very least, the warning was incomplete and potentially misleading. It may well be that under other circumstances, trial judges might find that the form warning, in the context of a particular case, interfered with a specific individual's right to an independent test, and as a result, the court might suppress the government's Intoximeter test. Consequently, the police would be wise to redraft the form warning to make it clear that the proffered blood test is an option, but not the exclusive means available to a defendant for obtaining independent verification of an Intoximeter 3000 examination. By the same token, if the police continue to use the form warning, the police should make it clear that, while a person accused of driving under the influence must immediately request a blood test in order to obtain one at municipal expense, that person may nevertheless through his or her own efforts and at his or her own expense thereafter obtain an independent test from a health professional of his or her own choosing. Such a warning should make it clear that the municipality cannot give an accused legal or medical advice and that if the accused has questions about the right to an independent test, those questions should be referred to the person's legal and health advisors.[5]

The petition for rehearing is DENIED.

BRYNER, C.J., dissents.

COATS, J., not participating.

BRYNER, Chief Judge, dissenting.

In rejecting Gundersen's contention that the municipality's "Notice of Right to an Independent Test" was misleading, the majority's original opinion in this case relied heavily on the conclusion that Gundersen had failed to make a case-specific showing of prejudice. I argued, in dissent, that no showing of prejudice should be required. On rehearing, Gundersen pointed out that he did make a showing of prejudice—a fact that this court overlooked in its original decision. In response, the majority of the court switches ground.

Today, the court holds that a valid showing of prejudice can be made only by persons who affirmatively express an interest

---

**5.** The dissent mistakenly implies that this court is making new law by its decision. In fact, defendants have always had to prove prejudice in support of a claim that the police interferred with their attempts to obtain exculpatory evidence. *Cf. United States v. Bagley*, 473 U.S. 667, 682–84, 105 S.Ct. 3375, 3383–85, 87 L.Ed.2d 481 (1985) (defendant complaining of prosecution's failure to disclose exculpatory or impeaching evidence must establish materiality of evidence in order to be entitled to a remedy). Normally, a person claiming that he or she was the victim of misrepresentation must prove "causation in fact" in order to obtain a remedy. *See* Restatement (Second) of Torts § 546 (1976). Finally, all of the cases discussing the issue seem to require proof of actual interference in order to obtain a remedy for a claimed violation of the right to an independent test. *See, e.g., State v. Clark*, 762 P.2d 853, 855–56 (Mont.1988). *See also* Annotation, *Drunk Driving: Motorist's Right to Private Sobriety Test*, 45 A.L.R. 4th 11–76 (1986 & Supp.1987).

in obtaining an independent test at the time of their arrest. The majority insists that Gundersen's showing of prejudice is inadequate because it was made after the fact. According to the majority, Gundersen would have been entitled to relief only by "contemporaneous evidence that at the time Gundersen declined the blood test, he asserted a right to an independent test...." The standard to which the majority would hold Gundersen is "conclusive proof that the police interfered with his right to an independent test."

The "contemporaneous evidence" requirement is articulated for the first time in the court's opinion on rehearing. A careful review of the majority's original opinion reveals no mention of this requirement. To my knowledge, such a requirement has not been imposed in any other case at any other time. With good reason: the requirement is as unrealistic as it is unprecedented.

As I pointed out in my original dissent, there are two major problems with the "notice" that was read to Gundersen. First, the notice describes the right to an independent test as a right to a blood test, when in fact the statutory right encompasses any reliable form of testing, the choice being specifically left to the person who has been arrested for DWI. Second, the notice describes the right to an independent test as one that must be exercised immediately or lost. In fact, the statutory right may be exercised by an arrestee at any time within four hours after the alleged offense. *See* AS 28.35.030(a)(2); AS 28.35.031(a); AS 28.35.033(e). There is no requirement that the right be exercised "contemporaneously" with the arrest. So long as the independent test is conducted within four hours of the alleged offense, it is entitled to a presumption of reliability.

It is precisely because the statutory right to an independent test need not be exercised contemporaneously with an arrest that the majority's restrictive requirement of a "contemporaneous assertion" of that right is unduly burdensome. The effect of the majority's rule is to place defendants in a Catch–22 situation. By allowing for an independent test within four hours of a DWI offense, the statute entitles those who are arrested for DWI to make the decision to exercise their right to an independent test after the Intoximeter test has been given and its results are known. Typically, before the statutory time for an independent test has elapsed, a person who has been arrested for DWI will have been taken before the magistrate and released on bond. The person will have had the opportunity to reflect on the advisability of an independent test in private or with the advice of friends or legal counsel, outside the coercive setting of the station house.

Nowhere does the statutory scheme that establishes the right to an independent test require a person who has been arrested for DWI to express an interest in an independent test before being released. In many cases where independent tests are eventually obtained by persons who have been arrested for DWI, those persons may not even become aware of the option until after their release. Even for those who are aware of the right at the time of their arrest, the desirability of exercising that right may not become clear to them until after the process of arrest and booking has been completed.

The challenged notice in this case was misleading in that it erroneously told Gundersen that he was required to exercise his right to an independent test immediately or lose it altogether. Without denying that the challenged notice was misleading in this regard, the majority of the court erects a paradoxical standard of prejudice that forecloses any person from claiming that the challenged notice was misleading unless that person was prepared to assert the statutory right immediately after being confronted with an improper demand to do so at the station house. The majority's rule would allow relief only to those who, upon arrest, have already decided that they are interested in an independent test.

In practical effect, then, the majority's decision on rehearing accords no significance whatsoever to the statutory provision allowing four hours within which the election to take an independent test may be

made. The majority thereby condones a systematic practice that turns the statutory right to an independent test into a "put up or shut up" choice of a single form of police-supervised test.[1]

While our supreme court has made it clear that persons arrested for DWI need not be affirmatively advised of the statutory right to an independent test, *Palmer v. State*, 604 P.2d 1106 (Alaska 1979), the court has never suggested that it would approve the systematic and affirmative use of disinformation. Nor has the court suggested that a systematic pattern of disinformation could be institutionalized by the erection of an impossible burden of showing prejudice. The "contemporaneous evidence" requirement that has been adopted by the majority today will have the inevitable effect of denying relief to those who are most seriously misled by the information contained in the challenged notice. Accordingly, I dissent.

1. The majority attempts to soften the impact of its holding by describing the district court's rejection of Gundersen's argument as an "implicit" factual determination that Gundersen was not actually misled by the challenged notice and by declining to find this factual determination to be clearly erroneous. The majority mischaracterizes the record. The district court never made a factual determination, implicit or explicit, as to the effect of the challenged notice on Gundersen. A review of the record makes it clear that the court's ruling was one of law, not of fact. In rejecting Gundersen's argument that the challenged notice infringed on his statutory right to an independent test, the court relied exclusively on *Palmer v. State*, 604 P.2d 1106 (Alaska 1979), which held that affirmative advise concerning the statutory right to an independent test is not required. The court apparently reasoned that, because no affirmative advice was required under *Palmer*, the limited choice afforded in the challenged notice could not have infringed Gundersen's statutory right. Under this analysis, it was simply unnecessary for the district court to reach the factual question of whether Gundersen was actually misled as to the scope of his statutory right.