Steven W. **LONGLEY**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–2624.

Court of Appeals of Alaska.

June 23, 1989.

Valerie Leonard, Asst. Public Defender, Nome, and Dana Fabe, Public Defender, Anchorage, for appellant.

John R. Vacek, Dist. Atty., Nome, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Steven W. Longley and another driver, Ed Hatch, were involved in a minor collision on November 14, 1987. The police officer called to the scene was unable to persuade the two drivers to agree about fault and the payment of damages, so he suggested that they all go to the police station to continue their discussion. Longley and Hatch drove their own vehicles to the station.

At the station, Longley and Hatch continued arguing, each accusing the other of drinking. The two voluntarily took a preliminary breath test (PBT). Longley's PBT result was .179. The officer then asked Longley to take the Intoximeter test. When Longley said he did not want to blow into the Intoximeter, he was given the implied consent form informing him that he was under arrest for DWI and that refusal to take the Intoximeter test would be a misdemeanor. Longley was also advised of his *Miranda* rights. Longley submitted to the Intoximeter test and his result was .175. He was then told that he was free to go and that he would later be served with a summons to appear in court on a DWI charge.

A complaint charging Longley with DWI was filed and a summons was issued on November 19, 1987, but the police did not locate Longley in order to serve the summons until January 18, 1988. A jury trial was held June 28–30, 1988, and Longley was convicted of DWI. Longley appeals his conviction on several grounds.[1] We reverse.

## RULE 45

■ Longley contends that his right to a speedy trial under Alaska Criminal Rule 45 was violated. He argues that the 120–day period provided for in Rule 45 began to run on November 14, 1987, the day that he was

---

1. One error alleged by Longley is that the trial court improperly restricted his cross-examination of Officer Quirion. The state correctly argues that Longley has not preserved this issue for appeal because defense counsel's restriction of her own cross-examination made it unnecessary for the trial court to rule on this issue. The trial court did not actually restrict the cross-examination by any direct ruling.

placed under arrest for purposes of the implied consent law.

The state argues that this issue is controlled by our decisions in *Lindsay v. State*, 698 P.2d 659 (Alaska App.1985), and *Greenawalt v. Anchorage*, 692 P.2d 983 (Alaska App.1985). The state contends that under the rule of these cases, an arrest for implied consent purposes is not an arrest for Criminal Rule 45 purposes.

The defendant in *Greenawalt* was contacted by the police at the hospital following a traffic accident. An officer gave Greenawalt the option of submitting to a blood test at the hospital or being arrested and taken to the police station for a breathalyzer test. Greenawalt submitted to the blood test, so he was not placed under arrest that day. Three months later, a complaint for DWI was served on Greenawalt. Greenawalt claimed that Rule 45 had begun to run when he was detained at the hospital for the purpose of a blood alcohol test. We held that an "arrest" must meet the definition in AS 12.25.160 in order to trigger Rule 45. AS 12.25.160 states:

> Arrest is the taking of a person into custody in order that the person may be held to answer for the commission of a crime.

We upheld the trial court's finding that although Greenawalt had been in police custody at the hospital, that custody never amounted to an arrest as defined under AS 12.25.160.

The defendant in *Lindsay* was picked up by the police and taken to the station for questioning regarding a theft. Without formally arresting Lindsay, the police interrogated him for nearly an hour, asked him to sign consent forms for a search of his property, and then advised him of his rights and obtained a confession from him. We found that Lindsay had been unlawfully arrested and that his confession and the evidence seized after he consented to a search had to be suppressed. However, we held that Lindsay's detention, while an unlawful arrest for fourth amendment purposes, was not an arrest for Rule 45 purposes. We interpreted the definition of "arrest" in AS 12.25.160 as referring to a situation where a person is formally arrested and charged with a crime. We noted that a formal arrest would satisfy the requirement for a clear warning to all parties that the 120–day period provided for in Rule 45 had commenced.

The present case differs from *Lindsay* and *Greenawalt* in that Longley was formally arrested at the police station. The implied consent statute, AS 28.35.031, provides in part:

> (a) A person who operates or drives a motor vehicle in this state ... shall be considered to have given consent to a chemical test or tests of the person's breath for the purpose of determining the alcoholic content of the person's blood or breath *if lawfully arrested* for an offense arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle ... while intoxicated.

(Emphasis added). This statute does not apply to everyone who is in police custody under circumstances that amount to a fourth amendment arrest. It applies only to persons lawfully arrested on the specific charge of operating a motor vehicle while intoxicated. An arrest that activates the implied consent statute will also meet the definition in AS 12.25.160: "Arrest is the taking of a person into custody in order that the person may be held to answer for the commission of a crime."

When Longley was read the implied consent form informing him that he was under arrest for driving while intoxicated, he was under arrest as that term is defined in AS 12.25.160. Therefore, he was under arrest for Criminal Rule 45 purposes. We stated that the rule we announced in *Lindsay* was necessary so that Rule 45 arrests "[did] not include situations where an investigative detention slides over the line to become an arrest for fourth amendment purposes." *Lindsay*, 698 P.2d at 663. The *Lindsay* rule is not applicable in this case, where the detention stepped decisively beyond the subtle line separating a temporary stop from a fourth amendment arrest. With the recitation of the words, "You are under arrest for the offense of driving or operat-

ing a motor vehicle while intoxicated," all ambiguity vanished, and Longley's situation clearly became one of full, formal custody under AS 12.25.160. The subsequent choice by the police to release Longley with the promise of a forthcoming summons does not alter the custodial situation in which the breath test was administered.

Because we hold that the Rule 45 period began to run in this case on November 14, 1987, rather than on the later date chosen by the trial court, it is necessary to inquire whether the time from November 14, 1987 to the trial date of June 28, 1988, minus all periods excluded under the rule, is greater than 120 days. Specifically, it must be determined whether the state exercised due diligence in attempting to locate Longley between the time of issuance of the original summons on November 19, 1987, and the eventual service of a reissued summons on January 18, 1988. In light of its ruling that Rule 45 did not commence until the summons had been served, the trial court declined to make findings on this issue. We therefore find it necessary to remand the case for the entry of factual findings regarding the running of the Rule 45 period in this case, following such hearing as may be required for this purpose.

Because it is possible that the Criminal Rule 45 issue may not be dispositive of Longley's case, we will proceed to consider the other issues Longley raises.

## ADMISSIBILITY OF THE INTOXIMETER RESULT

■ Longley argues that in view of the trial court's finding that he was not under arrest for Rule 45 purposes when he took the Intoximeter test, the test was not permissible as a search incident to arrest. Our holding that Longley was under arrest for Rule 45 purposes at the time he took the test renders this argument moot. Where, as here, an Intoximeter test is administered in compliance with the implied consent statute, it is reasonable as a search incident to arrest. *Burnett v. Anchorage,* 678 P.2d 1364, 1368 (Alaska App.1984).

■ Longley also argues that the results of his Intoximeter test should have been suppressed because the state failed to provide him with a means of independently verifying the results, as required by this court's decision in *Anchorage v. Serrano,* 649 P.2d 256 (Alaska App.1982). No sample of Longley's breath was preserved, apparently because the Nome Police Department had run out of perchlorate tubes in which to preserve samples. The state contends that the implied consent form which was read to Longley satisfied the *Serrano* standard by giving Longley notice of his right to an independent test.

The implied consent form read to Longley contained the following language:

9. You may, at your own expense, have a qualified person of your choosing administer a chemical test in addition to this test.

10. Do you have any questions regarding this test?

We stated in *Serrano* that an acceptable alternative to the preservation of breath samples would be established if the state could show, at a minimum:

(1) that the officer who administered the breathalyzer test clearly and expressly informed the defendant of his right to secure an independent test under AS 28.35.033(e);

(2) that if the defendant requested an independent test, the officer who performed the breathalyzer test or other officers having actual physical custody of the defendant made reasonable and good-faith efforts to assist the defendant in obtaining access to a person qualified to perform an independent examination; and

(3) that persons qualified to conduct independent tests or to preserve blood or breath samples for the purpose of conducting independent tests were in fact available in the area where the breathalyzer test was administered.

*Serrano,* 649 P.2d at 258 n. 5.

The trial court found that Longley had been given adequate notice of his right to an independent test and that Longley did not request an independent test.

Longley argues that paragraph 9 of the implied consent form is too vague and incomplete to have "clearly and expressly informed" him of his right to an independent test. He argues that because no breath sample was being preserved, he should have been informed that if he wanted an independent test he would have to be retested within the next few hours.

Our recent opinion in *Gundersen v. Anchorage*, 762 P.2d 104 (Alaska App.1988), dealt with a similar situation. Gundersen claimed that the notice given to him of his right to an independent test was incomplete and misleading because it referred only to a blood test. We held that the Intoximeter result would not be suppressed unless Gundersen could establish "that the warning he received constituted interference, *i.e.*, prevented him from obtaining an independent test that he would have obtained had he received no warning at all." *Gundersen*, 762 P.2d at 109. On rehearing, we held that because the trial court had found that the police did not interfere with Gundersen's right to an independent test, he could prevail only by establishing that there was interference as a matter of law. *Gundersen v. Anchorage*, 769 P.2d 436, 440 (Alaska App.1989). Interference, as a matter of law, can be established only by a showing that the police ignored the defendant's contemporaneous assertion of interest in an independent test. *Gundersen*, 769 P.2d at 440.

In the present case, the trial court found that the notice given to Longley of his right to an independent test satisfied the *Serrano* requirement. Implicit in this finding is a determination that the notice did not interfere with Longley's right to an independent test. Longley alleges no police interference aside from the incomplete notice, and he does not challenge the trial court's finding that he expressed no interest in an independent test at the time it was offered to him. Absent any showing of police interference, notice such as that given to Longley of the right to an independent test is not grounds for suppression of the Intoximeter results.

## ADMISSIBILITY OF LONGLEY'S STATEMENT

■ Longley makes several arguments regarding the admission into evidence of a statement he made at the police station, admitting that he had had a couple of beers.

After the prosecutor mentioned it in his opening statement to the jury, Longley moved to suppress Officer Quirion's testimony regarding his statement because the statement had not been provided to the defense in pretrial discovery as required by Criminal Rule 16. The prosecutor responded that he believed that the statement was included in the police reports provided to the defense. However, upon reviewing the reports, he conceded that they did not mention Longley's statement. The trial court refused to suppress the testimony but offered the defense a one-day continuance in which to prepare to respond to the newly-revealed evidence. Longley declined the offer of a continuance.

Absent a strong showing of prejudice, the proper remedy for this type of Rule 16 violation is the granting of a continuance. *See Christie v. State*, 580 P.2d 310 (Alaska 1978); *Des Jardins v. State*, 551 P.2d 181 (Alaska 1976); *State v. Lewis*, 632 P.2d 547 (Alaska App.1981). Longley has made no showing that he was significantly disadvantaged by the introduction without prior notice of the testimony regarding his statement. The trial court's offer of a continuance was the proper remedy for the Rule 16 violation in this case.

■ Longley also argues that his statement that he had had a couple of beers should not have been admitted because it was made before he was read his *Miranda* rights and because the statement was not electronically recorded as required by *Stephan v. State*, 711 P.2d 1156 (Alaska 1985). Longley did not make these objections at trial, but he argues that they are reviewable as plain error under Alaska Rule of Criminal Procedure 47(b).

Issues involving the application of the exclusionary rule are not appropriately raised for the first time on appeal. *Mor-*

*eau v. State*, 588 P.2d 275 (Alaska 1978). The alleged error here is not the type of "singularly egregious violation" for which we might make an exception to this rule. *Moreau*, 588 P.2d at 280 n. 13.

■ Longley contends that the trial court erred in failing to instruct the jury that oral admissions of the defendant should be viewed with caution. Longley admits that he did not request such an instruction. He cites Alaska Criminal Rule 30(b) and *Daniels v. State*, 388 P.2d 813, 815 n. 6 (Alaska 1964), for the proposition that this instruction is mandatory even without a request from the defendant. At the time *Daniels* was decided, Rule 30(b) did require such an instruction. However, as the supreme court noted in *Kristich v. State*, 550 P.2d 796, 800 n. 11 (Alaska 1976), the rule was revised effective December 15, 1975, to give more discretion to the trial judge in giving jury instructions. Rule 30(b) no longer makes this instruction mandatory, and there is no indication that Magistrate Gater abused his discretion in failing to give the instruction, especially in light of the fact that Longley did not request it.

### ADMISSIBILITY OF LONGLEY'S INITIAL REFUSAL TO SUBMIT TO INTOXIMETER TESTING

■ Finally, Longley argues that the court erred in denying his motion to suppress evidence of his initial refusal to take the Intoximeter test. The following testimony was presented at trial:

Prosecutor: What happened when the time came to take the test?

Officer Quirion: We got it all ready, and then he decided he wasn't going to take the test.

Prosecutor: After you explained to Mr. Longley that the law didn't allow him to refuse to take the test, did he agree to take the test?

Officer Quirion: Yes, he did.

It is clear that evidence of a defendant's refusal to submit to a chemical test after being lawfully arrested for DWI and informed that the refusal may be used against him is admissible if it is relevant and its probative value outweighs its prejudicial impact. AS 28.35.032(e); *Coleman v. State*, 658 P.2d 1364, 1366 (Alaska App. 1983); *Williford v. State*, 653 P.2d 339, 342 (Alaska App.1982), *rev'd on other grounds*, 674 P.2d 1329 (Alaska 1983). The testimony in this case, however, referred to Longley's refusal to take the test before he was placed under arrest and read the implied consent form.

Alaska Statute 28.35.032(a) provides:

If a person under arrest refuses the request of a law enforcement officer to submit to a chemical test under AS 28.-35.031(a), after being advised by the officer that the refusal will, if that person was arrested while operating or driving a motor vehicle for which a driver's license is required, result in the denial or revocation of the license or nonresident privilege to drive, that the refusal may be used against the person in a civil or criminal action or proceeding arising out of an act alleged to have been committed by the person while operating or driving a motor vehicle or operating an aircraft or a watercraft while intoxicated, and that the refusal is a misdemeanor, a chemical test may not be given, except as provided by AS 28.35.035.

Alaska Statute 28.35.032(e) provides:

The refusal of a person to submit to a chemical test of breath under (a) of this section is admissible evidence in a civil or criminal action or proceeding arising out of an act alleged to have been committed by the person while operating or driving a motor vehicle or operating an aircraft or watercraft while intoxicated.

Longley's initial refusal to submit to the Intoximeter test is not admissible under the terms of AS 28.35.032 because Longley had not yet been advised that his refusal could be used as evidence against him, as required by subsection (a) of the statute. A showing that the warnings required by the implied consent statute were given is necessary to establish a foundation for the admission of evidence of a refusal. *Svedlund v. Anchorage*, 671 P.2d 378, 385

(Alaska App.1983); *Williford v. State*, 653 P.2d at 342.

Without the warnings, a refusal to submit to an Intoximeter test may not come in under AS 28.35.032(e). A case such as this one is controlled by the cases decided prior to the 1980 amendment to AS 28.35.032, which added subsection (e) and the requirement of a warning that a refusal may be used against the person. In *Puller v. Anchorage*, 574 P.2d 1285 (Alaska 1978), the supreme court held that a refusal to take a breathalyzer test was inadmissible because the warnings given under AS 28.35.032 at that time did not include a warning that a refusal could be used as evidence against the driver. The court held that the warning requirement was intended to assure an informed choice on the part of the motorist, and that it would be unfair to attach to the refusal a consequence of which the driver had not been notified. *Puller*, 574 P.2d at 1288. *See also Wirz v. State*, 577 P.2d 227 (Alaska 1978) (if an arrestee refuses to take the test, he must be advised of the consequences flowing from his refusal, and be permitted to reconsider his refusal in light of that information). Longley's refusal to take the test was not an informed choice. He had not yet been warned of any of the possible consequences of refusing, and as soon as he received those warnings, he agreed to submit to the test. Under these circumstances his refusal should not have been admitted.

■ The state argues that the admission of Longley's refusal, if it was erroneous, was harmless. The state claims that this evidence was merely cumulative of evidence that Longley was uncooperative with Officer Quirion during the twenty-minute waiting period before the test was administered. We disagree.

A refusal to take the Intoximeter test is more probative of consciousness of guilt than the type of behavior Longley exhibited after he agreed to take the test (e.g., sticking his fingers in his mouth). Also, aside from the Intoximeter reading, there was very little evidence of Longley's intoxication. In the absence of testimony about matters such as erratic driving, field sobriety tests, observations of slurred speech, and odor of alcohol, it cannot fairly be said that the evidence of Longley's refusal did not appreciably affect the jury's verdict. *Love v. State*, 457 P.2d 622, 632 (Alaska 1969).

This case is REMANDED to the district court. Upon remand, the court is directed to enter findings concerning the running of the Criminal Rule 45 speedy trial period. If the court finds that the speedy trial rule was violated, an order of dismissal with prejudice shall be entered. If the court finds that the speedy trial rule was not violated, the conviction shall be VACATED, and the state shall be offered the option of scheduling the case for retrial.